UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

Anthony Riccardo

                Plaintiff,

    -against-
  :

NEW YORK CITY DEPARTMENT OF
EDUCATION, MINERVA ZANCA, Principal
of the Pan American International High School,
JUAN S. MENDEZ, Superintendent of Queens High
Schools,

                Defendants.
------------------------------------------------------------x

COMPLAINT

Docket No.:

JURY TRIAL DEMANDED

Plaintiff, Anthony Riccardo submits the following Complaint, through his counsel, Noah A. Kinigstein, as follows:

**Preliminary Statement**

1. Plaintiff, Anthony Riccardo, files this Complaint under 42 U.S.C. §1983, The Civil Rights Act of 1964, 42 U.S.C. §2000-e et. seq. and the New York State Executive Law, New York Executive Law §296 et. seq., New York City Human Rights Law, New York City Administrative Code §8-101, et. seq.. because said actions and omissions of the New York City Department of Education, Minerva Zanca and Juan Mendez violated the plaintiff's rights as stated under the New York State Human Rights Law, New York Executive Law §296 et. seq., the New York City Human Rights Law, Administrative Code §8-101, et. seq., the Civil Rights Act of 1964, 42 U.S.C. 2000-e et. seq. and 42 U.S.C.§1983 in that the defendant, Minerva Zanca, as the principal of the Pan American International High School, discriminated and retaliated against the plaintiff after he engaged in

1

protected activity in speaking out about defendant Zanca's discrimination against African-American teachers in the Pan American International High School, which was then endorsed and supported by Superintendent Juan Mendez and, as such, the defendants are liable for said discriminatory and retaliatory actions, and principal Minerva Zanca and Juan Mendez are liable as aiders and abettors of the discriminatory and retaliatory actions and omissions. In addition this action is brought by Anthony Riccardo, against the New York City Department of Education, after he filed a complaint with the United States Equal Employment Opportunity Commission on September 23, 2013, asserting discrimination and retaliation against the New York City Department of Education based on his protected speech when he spoke out about the discriminatory and retaliatory actions and omissions of Principal Zanca who blatantly discriminated and retaliated against the African-American teachers at the International School. All administrative prerequisites have been complied with.

## JURISDICTION

2. This court has jurisdiction pursuant to 28 U.S.C. § 1343. The plaintiff further invokes the court's supplemental jurisdiction pursuant to 28 U.S.C. §1367, over any and all state law claims and as against all parties that are so related to claims in this action within the original jurisdiction of the court that they form part of the same case or controversy.

3. Venue is proper in this district based on the general venue statute, 28 U.S.C. §1391.

## PARTIES

4. Anthony Riccardo (hereinafter "Riccardo") is an individual who was born on June 4, 1967.

5. The New York City Department of Education (hereinafter "DOE") is an agency of the City of New York and the State of New York which is authorized pursuant to the New York State Constitution and the New York State Department of Education to effectuate the constitutional requirements to educate the children of the state of New York in compliance with the rules, regulations and standards of the New York State Department of Education. It has a principal place of business at 52 Chambers Street, New York, NY 10007.

6. Minerva Zanca (hereinafter "Zanca") was the Principal of Pan American International High School, which has a principal place of business at 45-10 94th Street, Elmhurst, Queens, New York,  Zanca is being sued in her official and individual capacity.

7. Juan S. Mendez (hereinafter "Mendez")is the Superintendent of the Queens County High Schools, New York City Department of Education, with a principal place of business at 30-48 Linden Place, Flushing, New York, 11354

## FACTS

8. Plaintiff, Anthony Riccardo, (hereinafter "Riccardo"), was born on June 4th 1967.

9. In 2006, Mr. Riccardo received his Bachelor of Science from the State University of New York at Stonybrook.

10. Mr. Riccardo attended Queens College of the City University f New York, where he received his Master's Degree in Education, Biology,  in 2008.

11.  Riccardo is certified to teach biology for grades 7-12. He has obtained his professional certification to be a School Building Leader and he has been certified as a School District Leader. He has obtained his Certificate of Advanced Studies in Educational Administration, College of St. Rose, Albany, New York in May 2010.

12. From June 2006- August 2008, Mr. Ricardo taught at I.S. 93 in Ridgewood Queens, where he taught General Science. He taught 7th and 8th Grade Science, using N.Y.S. Middle School Science Inquiry-Based spiral curriculum. He also prepared advanced 8th grade students for the Earth Science Regents examination.

13. From September 2008-June 2011, Riccardo worked as a Biology/Chemistry teacher at Pan American International High School, Elmhurst Queens (hereinafter "Pan American").

14. At Pan American, Riccardo taught 9th and 10th grades "Living Environment and 11th grade Chemistry courses. He also developed a two year curriculum that incorporated supports and scaffolds for entirely English language learner population of students. At Pan American he was a member of the Professional Development Committee for two years. He chaired the Inquiry Team and provided training, and led research with a small group of colleagues. Riccardo coordinated staff wide project share-outs to provide opportunities to share best practices and examine student work. He developed performance based science assessment in accordance with New York State Performance Consortium standards for portfolio assessment.

15. Riccardo was appointed the Assistant Principal at Pan American in September 2010.

16. Initially Riccardo worked under Principal Marcella Barros.

17. In 2012 Barros resigned and Minerva Zanca (hereinafter "Zanca") became the Principal of Pan American.

18. As the Assistant Principal, Riccardo supervised four interdisciplinary instructional grade teams and five content area teams that shared accountability for a group of students and their students. He met with team leaders and the Principal to disseminate and analyze assessments, establish instructional and curricular interventions, and monitor student performance. In addition, Riccardo was involved in pedagogical frameworks, instructional goals and establishing school wide

goals. His work was wide ranging in helping to develop Pan American and helping to establish its After School Program and Saturday Academy to target students in academic jeopardy of failing to graduate.

19. When Riccardo began working, there was mutual respect between himself and Principal Barros. This changed when Zanca became the Principal.

20. Principal Barros supported Riccardo in obtaining his certification to become a principal. Riccardo was respected as a gifted educator when he worked initially as a teacher and later as an Assistant Principal.

21. Riccardo hired Lisa Erika-James, an African-American teacher, who was, and is, a gifted teacher. Ms. James created the theater program at Pan American, which was recognized as being highly effective and innovative. In addition, Mr. Riccardo worked with John Flanagan, (hereinafter "Flanagan"), an African-American teacher, who was also recognized as a gifted and dedicated teacher. Riccardo evaluated both teachers as "Satisfactory" prior to Zanca's arrival as the Principal.

22. Zanca became the Principal in August 2012, and initially, during the planning sessions, Zanca explained to Riccardo, among other things, that in order to remove a teacher, they had to generate a large amount of documentation and that she, Zanca, would teach Riccardo how to do this.

23. Zanca spoke to Riccardo about "going after" certain teachers by constantly going into their classrooms and giving teachers "Unsatisfactory", (hereinafter "U"), ratings.

24. Zanca stated to Riccardo that since a teacher could not grieve a "U"-rated lesson, it made it very difficult to grieve a "U"-yearly rating.

25. Zanca told Riccardo, when they started doing observations for teachers who were scheduled for tenure, whether or not a teacher would receive a "U"-rating before they went into the

classroom to observe a teacher's class. This is a violation of the evaluation protocol.

26. Zanca continued to describe how to constantly build a case for a "U"-rating.

27. In a June 24, 2013 statement, Riccardo stated, inter alia:

> Although many teachers were given Unsatisfactory lessons, and for various reasons, none were as ruthlessly targeted as were John Flanagan and Heather Hightower. Early on, Principal Zanca showed a dislike for Mr. Flanagan. From our first observation of Mr. Flanagan on November 8, 2012, she ensured he would receive a U-rating by finding everything she could that was wrong with the lesson. This was demonstrated by the fact that she provided Mr. Flanagan 39 words of commendable for him to build upon, while she wrote 648 words to address his areas of improvement. This form of "instructional leadership" would continue with Mr. Flanagan for the remainder of the school year. Each time we went into his classroom, 11/19/2012, 12/17/2012, 1/10/2013 and 2/4/2013, it was predetermined what rating he was to receive. Principal Zanca remarked that the magic number is four Unsatisfactory lessons to get a teacher out.

28. Riccardo also stated that Heather Hightower (hereinafter "Hightower"), another African-American teacher, was treated in a similarly outrageous and blatant manner.

29. Zanca specifically warned Riccardo that under no circumstances was he to make Ms. Hightower a better teacher.

30. Riccardo learned that Zanca had more than professional issues with Mr. Flanagan and Ms. Hightower, when she started to make racist and discriminatory comments about Hightower, Flanagan and James. In regards to Ms. Hightower, Zanca stated "she looked like a gorilla in a sweater" and "What is it with her fucking nappy hair? I could never have hair like that." In regards to Mr. Flanagan Riccardo stated that Zanca said, "Did you see his big lips quivering?" She also stated that she had a hard time not laughing in Mr. Flanagan's face because , and as she said, every time she saw his face it reminded her of a Tropicana commercial where this guy, with those same lips, is dancing down a supermarket aisle.

31. In or about January 2013, Zanca began her discriminatory and racist discussions, making

discriminatory statements about the Africa-American teachers. In or about February 2013, Riccardo began to object to her manner of evaluation requiring him to give U-ratings prior to doing the class evaluation.

32. In or about February 2013, Riccardo decided that he would no longer go along with Zanca's racist, discriminatory and unethical behavior and he expressed his decision to not comply with her outrageous behavior. Zanca then began retaliating and writing him up with the intention of giving him a "U"-rating, justifying his termination and ending his ability to work in his chosen field. It was at or around this time that Riccardo told John Flanagan, Lisa Erika James and Heather Hightower what was going on with Zanca.

33. In or about April 2013, Zanca again began retaliating against Riccardo and as a result Riccardo had a severe emotional reaction and his doctor told him to take time off because of the intense stress that he was under. The DOE granted his leave and Riccardo returned to work in or about June 6, 2013.

34. In or about June 2013, Zanca confronted Riccardo when she asked for his yearly evaluation of Hightower. Riccardo told Zanca that he had given her a "Satisfactory " rating for her last formal evaluation, at which Zanca flew into a rage screaming and yelling at him for not following her instructions about getting rid of Hightower. Riccardo asked Zanca to leave his office and in response Zanca had Riccardo forcefully removed from the school building by the school security.

35. In June 2013, Ricardo filed a complaint with the New York City Department of Education Office of Equal Opportunity in regards to Zanca's discriminatory and unethical conduct which both Zanca and Mendez knew about.

36. Zanca gave Riccardo a "U"-rating for the year which was retaliation for his protected

First Amendment speech of complaining about Zanca's discriminatory and retaliatory actions and omissions. Said "U"-rating has never been removed, and as a result Riccardo was unable and or barred from returning to his employment at the DOE.

37. Riccardo then called the Superintendent, Juan Mendez and told him what was happening. Mendez never returned his phone call.

38. In or about June 2013, immediately following the confrontation with Zanca, Mendez had a meeting with Zanca. This meeting lasted approximately three hours. Mendez did not contact or discuss the incidents that Riccardo complained about, although Riccardo requested a meeting.

39. Immediately thereafter, in late June 2013, Zanca gave Riccardo a "U"-rating, destroying any chance he had in continuing as a an assistant principal and derailing any chance at becoming a principal or even superintendent. Upon information and belief, it was Zanca's "U"-rating, and Mendez's subsequent discriminatory and retaliatory acts of affirming the "U"-rating, that Riccardo's career at the DOE came to an end, after years of education, training and dedication.

40. As a result of Zanca's discriminatory and retaliatory actions Riccardo's life was turned upside down emotionally and financially. Riccardo became deeply depressed.

41. In or about July 2013, Riccardo contacted Mendez, the Superintendent of Queens High Schools and told him what had happened including Zanca's racist actions and statements and that he had been given a "U"-rating in retaliation for exposing Zanca's discriminatory and retaliatory actions and omissions He met with Mendez in early August 2013 and explained everything again in a three and a half hour meeting..

42. He told Mendez that he felt that he was ignoring him by not responding to him and he demanded some real action.

43. Mendez did absolutely nothing to investigate Riccardo's statements.

` 44. In or about September 20, 2013, Riccardo filed a complaint with the Equal Employment Opportunity Commission regarding the facts of this case.

45. In or about May 14, 2014, the EEOC rendered a probable cause determination regarding Riccardo's EEOC complaint. In said decision the EEOC determined that a stipulation that Riccardo signed in or about September 2013, which he signed under pressure and in order to have his unjust and illegal "U"-rating changed from a "U"-rating to a "S"-rating was signed under pressure and in order to have his illegal rating changed, and as such did not withstand scrutiny, and as such the signing of the stipulation did not bar the EEOC from determining that there was probable cause that he was discriminated against.

46. Zanca never reversed Riccardo's "U"-rating.

47. Riccardo attempted to obtain employment after Zanca gave him a "U"-rating in retaliation for his protected and statements about her discriminatory and retaliatory actions and omissions but because, at least in part, because of the "U"-rating he was unable to obtain employment in the DOE and he has been barred from returning to work at the DOE.

## FIRST CAUSE OF ACTION PURSUANT TO 42 U.S.C. §1983

48. The actions and omissions of the defendants violated the plaintiff's rights as secured by 42 U.S.C. §1983, in that he was discriminated against because of his just advocacy and protected First Amendment speech on behalf of the African-American teachers, Flanagan, Hightower and James and was retaliated against, and as a result the plaintiff was damaged.

## SECOND CAUSE OF ACTION PURSUANT TO
## THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. §2000-e et. seq.

49. The plaintiff repeats and restates paragraphs one (1) through forty-eight (48) and restates them as paragraph forty-nine (49 ) herein.

50. The actions and omissions of the defendant, the New York City Department of Education, in discriminating and retaliating against the plaintiff, Riccardo because of his advocacy and complaints of discrimination on behalf and for the African-American teachers, Flanagan, Hightower and James violated his rights as secured by the Civil Rights Act of 1964, 42 U.S.C. §2000-e et. seq. and as a result he was damaged.

## THIRD CAUSE OF ACTION PURSUANT TO NEW YORK
## HUMAN RIGHTS LAW, NEW YORK EXECUTIVE
## LAW §296 et. seq., AND NEW YORK CITY HUMAN
## RIGHTS LAW, NEW YORK CITY ADMINISTRATIVE
## CODE ,§8-101 et. seq.

51. Plaintiff/petitioner repeats and restates paragraphs one (1) through fifty (50) and restates them as paragraph fifty-one (51) herein.

52 . The actions and omissions of the New York City Department of Education, Zanca and Mendez were discriminatory and retaliatory and violated the plaintiff's rights under the New York State Human Rights Law New York Executive Law §296 et. seq., and the New York City Human Rights Law, New York City Administrative Code, §8-101 et. seq., and as such, the plaintiff has been damaged. In addition, the actions and omissions of the defendant interim acting Principal Minerva Zanca and Superintendent Juan Mendez illegally aided and abetted the discrimination and retaliation of Riccardo, and as a result Riccardo suffered damages proximately caused by defendant Zanca's and Mendez's actions and omissions.

WHEREFORE, the plaintiff demands:

1. Injunctive relief, reinstating the plaintiff to the position of Assistant Principal,

2. Reversing and overturning the "U"-rating he received for the 2012-2013 and granting him tenure,

3. All back pay and back benefits from the time he was terminated until he is reinstated,

4. Compensatory damages for the emotional harm the plaintiff suffered as a result of the discrimination and retaliation,

5. Punitive damages for the outrageous, discriminatory and retaliatory actions of the defendants that discriminated and retaliated against the plaintiff, including Zanca and Mendez, for aiding and abetting the discrimination and retaliation,

6. Costs,

7. Pre- and Post- Judgment Interest,

8. Attorney's Fees,

9. Jury Trial,

10. Any and all other relief this court deems just and appropriate.

Dated: New York, New York
June 23 , 2016

_____
Noah A. Kinigstein (NK3326)
Attorney for Riccardo
315 Broadway, Suite 200
New York, NY 10007
Tel.: (212) 285-9300
Fax.: (212) 385-2608
E-Mail: Nakasequal@aol.com